UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL P. ACQUAVIVA,

     Plaintiff,

v.                                                          Case No. 8:18-cv-2494-T-02CPT

ANDREW M. SAUL,
Commissioner of Social Security,[1]

     Defendant.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

     The Plaintiff seeks judicial review of the Commissioner's decision denying his application for Disability Insurance Benefits (DIB).  For the reasons discussed below, I respectfully recommend that the Commissioner's decision be reversed and the case be remanded.

I.

     On September 24, 2012, the Plaintiff applied for DIB, alleging disability as of September 11, 2012, due to lower back pain, bulging discs in his lower back, irritable bowel syndrome, overactive bladder, sleep apnea, nerve damage, gastroesophageal

_____

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit.

reflux disease, and burning in his thighs and shoulders.  (R. 974-980, 1029).  The Social

Security Administration (SSA) denied the Plaintiff's application both initially and on

reconsideration.  (R. 744-769).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a

hearing on the matter on September 10, 2014.  (R. 670-709).  The Plaintiff was

represented by counsel at that hearing and testified on his own behalf.  (R. 674-701).

A vocational expert (VE) also testified.  (R. 702-08).

On November 24, 2014, the ALJ issued a decision finding that the Plaintiff was

not disabled.  (R. 786-803).  The Appeals Council reversed that decision on appeal,

however, and remanded the matter with instructions that the ALJ reevaluate the

Plaintiff's past relevant work.  (R. 804-807).

On remand, the ALJ held another hearing on June 7, 2017.  (R. 710-43).  The

Plaintiff was again represented by counsel at that hearing and testified on his own

behalf.  (R. 713-31, 732-34).  A different VE also testified.  (R. 731-32, 734-43).

In a decision dated November 16, 2018 (November 2018 decision), the ALJ

found that the Plaintiff: (1) was insured for DIB through December 31, 2014, and had

not engaged in substantial gainful activity since his alleged onset date through his date

last insured; (2) had the severe impairments of lumbar spine degenerative disc disease,

non-insulin dependent diabetes mellitus, and a history of prior cervical spine fusion

with degenerative disc disease; (3) did not, however, have an impairment or

combination of impairments that met or medically equaled the severity of any of the

listed impairments; (4) had the residual functional capacity (RFC) to perform light

2

work with certain additional postural, environmental, and functional limitations; and (5) could perform his past relevant work as a mailing machine operator and a coating machine feeder.  (R. 28-42).  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  *Id.*

The Appeals Council denied the Plaintiff's request for review.  (R. 1-6).  Accordingly, the ALJ's November 2018 decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a).[2]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[3]

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that he cannot perform the work identified by the Commissioner. *Id.* In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. §§ 405(g). Judicial review is limited to determining whether the decision is supported by substantial evidence and the Commissioner applied the correct legal standards. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).   In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court accords deference to the Commissioner's factual findings, no such deference is given to [his] legal conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

## III.

The Plaintiff raises three arguments on appeal: (1) the ALJ did not properly assess the Plaintiff's mental impairments; (2) the ALJ failed to consider certain objective medical evidence in evaluating the Plaintiff's back and hip problems; and (3) the ALJ erred in finding that the Plaintiff could perform his past relevant work. (Doc. 15).[4]  The Commissioner counters that each of these arguments is without merit. *Id.*  Upon a thorough review of the record and the parties' submissions, I find that the Plaintiff's first and second arguments are well founded, such that remand is warranted.

## A.

At step two of the sequential evaluation process, the ALJ must engage in the "threshold inquiry" of deciding whether the claimant has a medically determinable impairment (or combination of impairments) that is severe.  *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (citing *McDaniel v. Bowen*, 800

---

[4] I have re-ordered the Plaintiff's arguments for purposes of my analysis.

F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  The severity of an impairment is "measured in terms of its effect upon [the] ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  As a result, an impairment is considered severe only if it significantly limits a claimant's physical or mental abilities to engage in basic work activities.  20 C.F.R. §§ 404.1520, 404.1521(a); *Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987)).  A non-severe impairment, on the other hand, is one that does not result in such a limitation.  20 C.F.R. § 404.1522.

When a claimant presents a "colorable" claim of a mental impairment, the ALJ must apply the Psychiatric Review Technique (PRT) mandated by the Regulations. *Moore*, 405 F.3d at 1213-14; 20 C.F.R. § 404.1520a.  This technique requires that the ALJ assess the Plaintiff's mental impairment using the following four broad functional areas (known as the "Paragraph B" criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[5]   20 C.F.R. § 404.1520a(c)(3).

If, after applying the PRT, the ALJ rates the functional restriction caused by the claimant's mental impairment to be "none" or "mild," then the ALJ will generally conclude that the impairment is not severe, "unless the evidence otherwise indicates

---

[5] Prior to January 16, 2017, these four functional areas consisted of: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation."  20 C.F.R., Part 404, Subpart P, Appendix 1 (2016).

that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* at § 404.1520a(d)(1). The Regulations also mandate that the ALJ provide a specific explanation for his opinion, including the degree of limitation found in the functional areas listed above. *Id.* at §§ 404.1520a(c)(4), (e)(4). The ALJ must then incorporate the results of the PRT into his findings and conclusions. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).

The PRT, however, is separate from the ALJ's step four RFC determination, which requires an assessment of the claimant's maximum ability to do work despite his impairments, both severe and non-severe. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-69 (11th Cir. 2019) (per curiam) (noting that "[c]onsideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC"). The RFC analysis therefore represents a more detailed evaluation of the claimant's ability to function. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (observing that criteria used to rate severity of mental impairments at step two do not amount to an RFC assessment and that a "more detailed" evaluation is mandated at steps four and five, requiring "itemizing various functions contained in the broad" functional areas).

Here, at step two of his analysis, the ALJ found that the Plaintiff had the medically determinable impairments of depression and/or adjustment disorder with anxiety and depressed mood. (R. 33). Having found that the Plaintiff's mental impairments were at least colorable, he then considered the "Paragraph B" criteria and

found that these impairments caused the Plaintiff mild limitations in all four of the above-referenced functional areas. *Id.* Based on these findings, the ALJ determined that the Plaintiff's mental impairments were non-severe. (R. 34).

The Plaintiff maintains that the ALJ's analysis of the four functional areas was not as detailed as it should have been. (Doc. 15 at 20). He has a point. Instead of discussing the Plaintiff's mental health record in connection with each area, the ALJ engaged in a broad discussion of the evidence, noting the lack of any mental health treatment "at any time relevant to [his] decision;" the "essentially normal findings" reported in an April 2013 psychological evaluation performed by Linda Appenfeldt, Ph.D.; and the determination by a state agency psychological consultant, David Partyka, Ph.D., that the Plaintiff's mental impairments were not severe. (R. 34).

While I agree with the Plaintiff that the ALJ's analysis of the Paragraph B criteria could have been more fulsome, I find that the ALJ did all that the Regulations required him to do at step two; he rated the Plaintiff's degree of limitation in the four functional areas. 20 C.F.R. §§ 404.1520a(c)(4), (e)(4). Thus, notwithstanding the Plaintiff's urging to the contrary (Doc. 15 at 19-22), I find no reversible error in the ALJ's failure at step two to conduct the type of full or individualized analysis of each functional area that the Plaintiff argues he should have.

I do, however, find the ALJ went awry at step four. While he specifically noted in his decision that his Paragraph B findings at step two were not a substitute for the more detailed mental RFC assessment (R. 34), the ALJ's subsequent step-four discussion regarding the Plaintiff's RFC contains no such assessment. Other than

mentioning the Plaintiff's alleged difficulties with attention and concentration due to his diabetes and medication side effects (R. 35, 38), the ALJ's RFC evaluation omits any discussion as to the extent to which the Plaintiff's medically determinable impairments of depression and/or adjustment disorder altered his vocational capacity.[6]  Indeed, the ALJ did not make *any* findings at step four regarding the Plaintiff's mental impairments or the evidence supporting them (including the weight he afforded to Dr. Appenfeldt's opinions) or how they affected the Plaintiff's ability to work.  Instead, the ALJ focused entirely on Plaintiff's physical impairments.  This was error.  *Schink*, 935 F.3d at 1269 ("Even the most favorable interpretation of the ALJ's opinion—namely, that the ALJ considered [the plaintiff's] mental conditions in the RFC assessment *sub silentio* and implicitly found that they imposed no significant limitations on his work-related mental capacities—would not permit us to affirm because, as our precedent holds, the ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right.") (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)); *see also Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (holding that failure to consider a claimant's impairments in

---

[6] The only limitation the ALJ included in the RFC that could arguably be attributed to a mental impairment is that the Plaintiff "should avoid work requiring constant and/or repetitive verbal communication or oral communication with the public." (R. 34).  A fair reading of the decision, however, makes clear that this restriction was to "accommodate the [Plaintiff's] chronic stutter" (R. 39), not his depression, adjustment disorder, or any other mental impairment.

9

combination "requires that the case be vacated and remanded for the proper consideration").

In light of the above finding, I need not address the Plaintiff's remaining claims of error. *See Demench v. Sec'y of Dep't of Health and Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (stating that where remand is required, it may be unnecessary to review other issues raised). I address them briefly, however, in the interest of completeness.

### B.

As alluded to above, the Plaintiff's second argument is that the ALJ erred by failing to consider certain medical evidence relating to the Plaintiff's back and hip problems in determining his RFC. That evidence consists of a May 2015 MRI, which was ordered prior to, but conducted five months after, the Plaintiff's date last insured (R. 1973-76); and a September 2014 CT scan of his pelvis (R. 1979-80). By my review, this claim of error has merit and provides further grounds for remand.

In determining a claimant's RFC, an ALJ must examine all the relevant evidence of record in assessing what a claimant can do in a work setting notwithstanding any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). As a result, in rendering the RFC, the ALJ must consider any medical opinions of record, all of the claimant's medically determinable impairments (both severe and non-severe), the total

10

limiting effects of each impairment, and the claimant's subjective symptoms. *Id.* at §§ 404.1520(e), 404.1545(a); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

The evaluation of a claimant's subjective symptoms is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). Under this standard, the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

In the end, while "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," his decision must reflect that he considered the claimant's medical condition as a whole. *Id.* at 1211 (citation and internal quotation marks omitted).

Here, as noted by the ALJ in his decision, the Plaintiff complained of symptoms related to his physical impairments, including testifying at the second ALJ hearing that he was able to lift fifteen to twenty pounds, could sit for thirty minutes, stand for less than thirty minutes, and walk for fifteen minutes during the two years prior to his date last insured (i.e., from 2012 through the end of 2014). (R. 35). As the ALJ also acknowledged, the Plaintiff's condition worsened after December 31, 2014, his date last insured, to the point where he began to use a cane. *Id.*

11

The ALJ determined, however, that the Plaintiff's conditions prior to that date were not disabling.  The ALJ found in relevant part that, while the Plaintiff's medically determinable impairments could reasonably be expected to cause some of these alleged symptoms, his subjective complaints were not entirely consistent with the record evidence.  (R. 35, 39).  In support of this conclusion, the ALJ pointed to, among other things, a September 2014 x-ray of the Plaintiff's lumbar spine that revealed mild findings; the "limited objective evidence and benign examination findings" in the record; and the fact that the Plaintiff did not use a cane until after his date last insured. (R. 37).

At no point in his discussion, however, did the ALJ reference the May 2015 MRI or the September 2014 CT scan.  By my reading, the ALJ's failure to address this objective medical evidence indicates that he did not consider the Plaintiff's condition as a whole.

I begin by recognizing that the Plaintiff lost his insured status for purposes of DIB on December 31, 2014 (R. 31), and that he was thus required to prove he was disabled prior to that date.  *Moore*, 405 F.3d at 1211; 42 U.S.C. §§ 416(i)(3), 423(a) & (c); 20 C.F.R. §§ 404.101, 404.130, 404.131.  I also recognize that the May 2015 MRI was taken nearly five months after the Plaintiff's date last insured.

That said, the May 2015 MRI shows more severe degenerative changes of the Plaintiff's lumbar spine than those evidenced in the September 2014 x-ray the ALJ cites in his decision.  (R. 37).  And, because degenerative diseases are inherently progressive conditions, *see Vanderhorst v. Comm'r of Soc. Sec.*, 2013 WL 6056445, at *4

(M.D. Fla. Nov. 14, 2013) ("Degenerative changes, by definition, occur over time."), the ALJ should have made it clear that he at least considered this evidence in rendering his RFC determination.

The ALJ's failure to address the May 2015 MRI is all the more noteworthy given his statement that the "limited objective evidence and benign examination findings" in the record supported his decision to discount the Plaintiff's allegations of more disabling limitations.  (R. 37)*.*  It is also noteworthy that, while discussing the Plaintiff's degenerative lumbar spine condition relative to the records of his treating orthopedist, the ALJ expressly stated that the Plaintiff did not have any "recent MRIs to show a worsening of his conditions."  (R. 36).  This latter statement leads me to question whether the ALJ was even aware of the May 2015 MRI.

The ALJ likewise erred in failing to consider the September 2014 pelvic CT scan.  At the second ALJ hearing, the Plaintiff testified that his hip problems started "about three years ago" (i.e., in roughly 2014) and that he began using a cane around the same time.  (R. 725).  Yet the ALJ stated in his decision that the Plaintiff testified he did not develop arthritis in his hips and commence using a cane until *after* his date last insured (i.e., December 31, 2014) (R. 35).  Putting aside whether this is a fair characterization of the Plaintiff's testimony, the September 2014 CT scan suggests that the Plaintiff's degenerative hip condition did, in fact, exist prior to his date last insured.  (R. 1980) (September 2014 CT scan showing "moderate osteoarthritis of the hips").  As a result, the ALJ should have addressed this objective medical evidence in making his RFC assessment, and it is not clear from my reading of his decision that he did so.

Because the potential impact of the May 2015 MRI and the September 2014 CT scan is reasonably disputed and because that medical evidence could materially affect the outcome of the ALJ's RFC determination, the ALJ should consider this evidence on remand in evaluating the Plaintiff's limitations and subjective complaints. *See Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006) (per curiam).

C.

With respect to the Plaintiff's third claim of error—that relating to his past relevant work—I find no grounds for reversal. The Plaintiff's argument centers on the ALJ's assessment at step four regarding the Plaintiff's ability to perform his past relevant work as a coating machine feeder and a mailing machine operator. The Plaintiff bears the burden at this step to show that his prior work is not past relevant work under the Regulations and that he is unable to perform it. *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); 20 C.F.R. § 404.1520(a)(4)(iv). The Regulations define past relevant work as the claimant's past *kind* of work, not the specific job he held in the past. *Jackson*, 801 F.2d at 1293 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). It is therefore insufficient for the claimant to show that he cannot perform the demands and duties involved in his past position. Instead, he must show that he cannot perform the functional demands and job duties of the same position as generally required by employers in the national economy. *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (citing *Jackson*, 801 F.2d at 1293-94).

The Plaintiff fails to make such a showing here. Simply put, he does not demonstrate that he is unable to engage in his past relevant work either as he actually

14

performed it or as it is generally performed in the national economy. As such, his third claim of error is without merit.

The Plaintiff's efforts to avoid this conclusion are unavailing. His first contention is that, in assessing his ability to perform his past relevant work, the ALJ misclassified one of his prior jobs as a "coating machine operator" under the Dictionary of Occupational Titles (DOT).[7] Plaintiff's counsel, however, did not object to this classification at the hearing. And, while he refers to this position in his memorandum as a "coating machine *operator*," the actual classification employed by the ALJ was that of "coating machine *feeder*." In any event, by my review, the ALJ's classification of the Plaintiff's past relevant work as a "coating machine feeder" appears consistent with both the Plaintiff's hearing testimony and the VE's subsequent explanation. (R. 732-35); *see also* DOT # 690.686-022, 1991 WL 678628 (G.P.O. 4th ed. 1991).

The Plaintiff's second contention is that the ALJ erred by not deeming his prior position as a mailing machine operator to be a "composite job," which the SSA defines as a position "that has 'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'" *Smith*, 743 F. App'x at 954 (quoting SSR 82-61 at *2). This contention is also unavailing. As with the coating machine feeder position above, Plaintiff's counsel did not object to the mailing machine operator classification

---

[7] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

at the hearing.  Regardless, past relevant work qualifies as a composite job only "'if it takes multiple DOT occupations to locate the main duties of the [past relevant work] as described by the claimant.'"  *Id.* (quoting Program Operations Manual System DI 25005.020).

Here, other than claiming he performed some duties additional to those described in the DOT listing, the Plaintiff does not identify any other job that would comprise those additional duties.  Nor does he explain why such additional duties made up a "significant" portion of his prior work.  Thus, I find no reversible error in the ALJ's findings with respect to the Plaintiff's past relevant work.

IV.

For the foregoing reasons, I recommend:

1.      The Commissioner's decision be reversed and remanded.

2.      The Clerk of Court be directed to enter Judgment in the Plaintiff's favor and to close the case.

3.      The Court retain jurisdiction on the matter of attorney's fees and costs pending further motion.

Respectfully submitted this 13th day of February 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable William F. Jung, United States District Judge
Counsel of record

17